IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 2016-cv-2897

DEANNA MEYER, BOTH INDIVIDUALLY AND DERIVATIVELY
ON BEHALF OF THE TRUE INTERESTS OF WILDLANDS DEFENSE, INC.,

    Plaintiffs,

v.

BRIAN ERTZ AND WILDLANDS DEFENSE, INC.,

    Defendants/Counter-Claimants,

v.

PRAIRIE PROTECTION COLORADO, INC.,

    Third-Party Defendant.

## COUNTERCLAIMANTS' MOTION FOR PRELIMINARY INJUNCTION

Come now Counterclaimants, Brian Ertz and WildLands Defense, Inc., by and through their counsel, Davison, Copple, Copple & Copple, LLP, pursuant to Fed. R. Civ. P. 65, and hereby move this Court for a Preliminary Injunction. This Motion is made and based on the records and files herein, the authorities cited below, and the Affidavits of Brian Ertz and Katie Fite filed herewith. A hearing on Plaintiff's Motion for Preliminary Injunction has been calendared for January 18. Counterclaimants respectfully requests that this Court utilize its discretion to decide Plaintiff's Motion for Preliminary Injunction and this motion without oral argument pursuant D.C.COLO.LCivR 7.1(h), (ECF No. 22 at 15). In the alternative, Counterclaimants request an order continuing the existing

hearing on Plaintiff's Motion for Preliminary Injunction, and that this Court set an expedited briefing schedule on this Motion for Preliminary Injunction, and enter an order setting both motions for a consolidated hearing, in the interests of judicial economy.

## I.     INTRODUCTION

This litigation involves a disgruntled former board member (Meyer) of an environmental nonprofit (WildLands, henceforth "WLD") who seeks to circumvent the decision-making authority of the nonprofit's corporate governance. Rather than develop and advocate for organizational support by convincing a majority of the board of the merit and propriety of certain actions in furtherance of the WLD's mission, Meyer, then a WLD board member, established an alternative and competing organization, Prairie Protection Colorado ("PPCO') and convinced several WLD members to defect. Meyer utilized her access and control of WLD's property, and in some instances used the WLD name, to capitalize the new organization while threatening WLD with financial and reputational injury if WLD did not give her additional funds. Meyer is executing on previous threats and seeks to circumvent the nonprofit's collective corporate governance with the instant litigation. This motion for preliminary injunction seeks to mitigate the ongoing and irreparable injury which results from Meyer's actions and the actions of PPCO during the pendency of this action.

## II.     STATEMENT OF FACTS

WLD's email contact lists, donor contact lists, membership contact lists, supporter contact lists, social media web-pages, emailing templates, petition lists, contact sign-up slips and lists (hereinafter collectively referred to as "contact data"),

correspondences and instruments, strategy documents and other work-products are the property of WLD. (ERTZ AFFIDAVIT at 1-12, App. 042-053). The 'WildLands Defense Colorado Facebook' page was initiated under the direction of WLD and it was developed and cultivated by an agent of WLD in performance of WLD's work . (ERTZ AFFIDAVIT at 1-2, ¶¶ 3-5). WLD's contact data and social media web-pages, emailing templates, and strategy documents were developed by WLD and are the intellectual property of WLD. (ERTZ AFFIDAVIT at 5-6, 9; ¶¶ 14, 25).

Meyer wrongfully gained dominion over WLD's property when she retained and *used* said property despite having been indefinitely suspended from her position and authority over program efforts, (ERTZ AFFIDAVIT at 6-7 ¶ 16), and when she was removed from the board, (ERTZ AFFIDAVIT at 12 ¶¶ 35-36). She likewise wrongfully gained dominion over WLD's property when she used WLD's logo, likeness, and name to establish internet fundraising accounts in soliciting donations without first having gained permission from the board or from WLD's Executive Director to do so, (FITE AFFIDAVIT at 11 ¶ 32; ERTZ AFFIDAVIT at 10-11; ¶ 29), and when she and/or Prairie diverted resultant funds to financial accounts outside of WLD's control. (*Id.;* ERTZ AFFIDAVIT at 7-12; ¶¶ 17-19, 29-31, 33-34). Likewise, Meyer and Prairie wrongfully gained dominion over WLD's property when Meyer unilaterally terminated Mr. Ertz's administrative control of the WildLands Defense Colorado Facebook page, (ERTZ AFFIDAVIT at 5, ¶ 11), renamed it "Prairie Preservation Colorado." (PPCO) (FITE AFFIDAVIT at 13 ¶ 38), and *used* the page to disclose and characterize confidential board business, (*Id.*). Meyer wrongfully gained dominion over WLD's property when she

forwarded emails containing proprietary files and correspondences, contact data, internal board and program instruments, and other intellectual property belonging to WLD *from* the email account setup by WLD for Meyer's use *to* her personal email and/or an email setup up for PPCO. (ERTZ AFFIDAVIT at 9 ¶ 28).

Use of WLD's intellectual property is not benign - contact data is utilized to prompt contacts' action, solicit funds, and otherwise effectuate WLD's mission. (ERTZ AFFIDAVIT at 9-10 ¶¶ 25-27). Overuse of said data contributes to an exhaustion of contact response. (ERTZ AFFIDAVIT at 10 ¶ 28). Likewise, use of WLD's strategic documents and intellectual property harms WLD, Meyer signed a covenant acknowledging such, (ERTZ AFFIDAVIT, Exh 11; App. 064 ("You agree that any disclosure of Confidential Information in violation of this agreement shall cause immediate and substantial damage to WLD…")) and it has been used to defame WLD. (ERTZ AFFIDAVIT at 13-14 ¶¶ 39-40). Ongoing use of WLD contact data by PPCO and/or Meyer causes ongoing damage to WLD.

### III.     COMPLIANCE WITH D.C.COLO.LCivR 7.1

Prior to filing this Motion, counsel for Counterclaimants conferred repeatedly with opposing counsel to see if a stipulation could be reached.  After a phone conversation and numerous emails back and forth, it was clear that Meyer and PPCO do not believe that Counterclaimants will suffer any harm, claim ownership of the WLP Facebook page (now in the name of PPCO), and are unwilling to agree not to use the WLD contact data in furtherance of PPCO or to agree to cease defamatory statements injuring WLD/Ertz. Specific proposals to ensure that PPCO did not use contact data of WLD were rejected,

and a proposal that the Facebook page in dispute be returned to WLD or closed down was also rejected.  Despite best efforts, reasonable compromise was not reached.

## IV. <u>ARGUMENT</u>

A preliminary injunction is an extraordinary remedy. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). It should not be issued unless the movant's right to relief is "clear and unequivocal." *Id.* The grant or denial of a preliminary injunction is a decision which lies within the sound discretion of the trial court. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). To obtain a preliminary injunction, the movant must clearly and unequivocally establish four elements: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harms that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

### A.  COUNTERCLAIMANTS ARE LIKELY TO SUCCEED ON THE MERITS

#### 1. **WildLands Likely To Succeed On Claim of Conversion**

To prove conversion a party must demonstrate three elements: (1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property. *Medical Recovery Services, LLC v. Bonneville Billing and Collections, Inc.*, 336 P.3d 802, 807 (2014), quoting *Taylor v. McNichols*, 243 P.3d 642, 662 (2010). Intangible property may be classed as personal property:

> "Personal property" is "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary 1337 (9th ed.2009).
>
> Many courts have limited conversion actions to tangible personal property because conversion, as a cause of action, is "based on the theory that the property converted was findable;" i.e. tangible. Val D. Ricks, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle with New Wine,* 1991 B.Y.U.L.Rev. 1681, 1699 (1991).
>
> Whether a conversion claim cannot be made with respect to intangible property is not an issue in this case because it is commonly held that "[a] check may be the subject of conversion." 44 A.L.R.2d 927 § 2. Likewise, specifically identifiable monies can also be the subject of a conversion claim. *See Warm Springs Props., Inc. v. Andora Villa, Inc.,* 96 Idaho 270, 272, 526 P.2d 1106, 1108 (1974). However, this Court has expressly held that "conversion for misappropriation of money does not lie unless it can be described or identified as a specific chattel." *Id.*

<u>Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.</u>, 157 Idaho 395, 400, 336 P.3d 802, 807 (2014).

The right to use a domain name has been held to be a form of intangible personal property. <u>Kremen v. Cohen</u>, 337 F.3d 1024, 1030 (9th Cir. 2003).  In discussing its holding the Court said "Property is a broad concept that includes "every intangible benefit and prerogative susceptible of possession or disposition." *Downing v. Mun. Court,* 88 Cal.App.2d 345, 350, 198 P.2d 923 (1948) (internal quotation marks omitted). We apply a three-part test to determine whether a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *G.S. Rasmussen,* 958 F.2d at 903 (footnote omitted). Domain names satisfy each criterion." *Id. at 1030.*  The Court considered that like a plot of land, a domain name reflects a specific where users are sent.  Domain names have

6

value and are bought and sold.  Ownership is exclusive, with substantial sums invested in websites that depend on their domain name.  Facebook pages are analogous.

A motion to dismiss a conversion claim on similar facts was denied in <u>PhoneDog v. Kravitz</u>, No. 11-03474, 2011 WL 5415612 (N.D.Cal.), 9-10; 2011 U.S. Dist. LEXIS 129229 (N.D. Cal. Nov. 8, 2011).  In PhoneDog, a former employee with 17,000 followers left the company and simply changed the name on his social media account to keep those followers, claiming his employer told him he could continue to use the account after separation.  PhoneDog claims it requests relinquishment of the account and instead, the name was changed.  These facts were found sufficient for a conversion claim.  Here, Meyer was asked to remove the WLD name for the FB page due to her inciting inappropriate methods of advocacy which could cause violence, fear or intimidation and which WLD did not want to be associated with, for legal and ethical reasons.  WLD did not relinquish ownership of the page to Meyer or the PPCO; Meyer unilaterally removed administrative control from Ertz and retitled the page PPCO, keeping all the former WLD followers without permission.  Prior to filing this Motion, Meyer refused to stop using the page pending the litigation, shut the page down, or return administrative control of the page to WLD.

Retention of social media as Meyer has done here was the basis of a conversion claim and resulted in an injunction being issued.  In <u>Ardis Health, LLC v. Nankivell</u>, No. 11 CIV. 5013 NRB, 2011 WL 4965172, at *2–3 (S.D.N.Y. Oct. 19, 2011), the Court held that there was sufficient evidence of irreparable harm if the access information for a social media account, which was taken and not returned by a former employee, was not

returned. The Court found the Plaintiff depended heavily on its online presence to advertise and there was a need to update pages and profiles. The inability to do so unquestionably had a negative effect on plaintiff's reputation and ability to remain competitive and the magnitude was difficult or impossible to quantify in monetary terms.

WLD depended on the Facebook page to communicate with members regarding the CO issues and with sole control of that page now in Meyer's hands, it has been renamed PPCO, it has been used to defame WLD, and it continues to be a vehicle by which WLD members receive information from PPCO instead of WLD, the entity followers signed on to follow. There is irreparable harm to WLD if Meyer and PPCO continue to have exclusive control over the Facebook page developed by WLD and communication with WLD members, now subscribed to a page denigrating WLD and promoting PPCO and advocating extreme methods not endorsed by WLD.

The contact data of WLD, the Facebook page of WLD usurped by Meyer, and funds solicited using contact data of WLD are subject to a conversion claim.

2. **WildLands Likely To Succeed On Claim of Breach of Fiduciary Duty**

The Idaho Nonprofit Corporation Act sets the standard for board conduct:

> A director shall discharge his duties as a director, including his duties as a member of a committee: (a) In good faith; (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) In a manner the director reasonably believes to be in the best interests of the corporation.

Idaho Code § 30-30-618.

In addition to explicit statutory duties, board members for nonprofits owe the corporations they serve common law fiduciary duties of care, loyalty, and obedience.

The duty of loyalty is the commitment a board member makes to the organization. A board member is expected to give his or her undivided allegiance to the charitable organization. The board member cannot use for personal gain any information obtained from his or her position on the board and should not discuss confidential board business with outsiders, or divert corporate opportunities.  Further, Idaho Code § 30-30-1104 specifies that a Board member shall not use contact data as Meyer did:

> Without consent of the board, a membership list or any part thereof may not be obtained or used by any person for any purpose unrelated to a member's interest as a member. Without limiting the generality of the foregoing and without the consent of the board, a membership list or any part thereof may not be:
> (1) Used to solicit money or property unless such money or property will be used solely to solicit the votes of the members in an election to be held by the corporation;
> (2) Used for any commercial purpose; or
> (3) Sold to or purchased by any person.

.   *a. Meyer Breached Duty of Good Faith and Loyalty*

While Meyer served as a member of the WLD Board, Meyer had a duty of loyalty to the organization which, among other things, included: (1) a commitment to adhere to the procedures of WLD's collective corporate governance and bylaws in furtherance of pursuits to advance its mission; and, (2) which forbade Meyer from taking for herself, or for any other, any opportunity that could benefit the corporation; and, (3) which forbade her and from pursuing any engagements, activities, or dealings which would render her personal interests antagonistic to those of WildLands while maintaining a position as a

board member. See *Melgard v. Moscow Idaho Seed co.*, 251 P.2d 546, 550 (1952) quoting *Jensen v. Sidney Stevens Implement Co.*, 210 P. 1003, 1005 (1922). [1]

Meyer breached her fiduciary duty of loyalty when she set up and established fundraising accounts without the knowledge or approval of WildLands' Executive Director, as required by WLD Bylaws Art. VI § 7 (Appendix to Response, ECF 22, Exhibit A, 008), without disclosing the existence of such accounts prior to their creation, (FITE AFFIDAVIT at12-13 ¶ 37; ERTZ AFFIDAVIT at 7 ¶ 17), and in refusing to disclose their existence when explicitly asked by WLD's Board President. (*Id.*). Meyer breached her fiduciary duty of loyalty when, despite remaining on the WLD Board, she failed to disclose that she had established and served as the principal agent for a new nonprofit entity with another of WLD's then-members (FITE AFFIDAVIT at 12 ¶ 36) and was using property belonging to WLD to raise money, profit, and otherwise advance the interests of herself and/or the new nonprofit entity and/or others. (FITE AFFIDAVIT at 13-14 ¶¶ 38-40; See *supra*). Meyer breached her fiduciary duty of loyalty when she took exclusive control of WLD's Facebook Colorado, (ERTZ AFFIDAVIT at 5 ¶ 11; *Supra*), and directed it toward furtherance of her own or PPCO's interest, FITE AFFIDAVIT at 11 ¶ 32; *Supra*). Meyer breached her duty of good faith and loyalty when she admitted to the Board of Directors that she did not care about the organization, (ERTZ

---

[1] "'And, if an agent makes any profit in the course of his agency because of his failure to inform his principal of facts known to him, or which in the exercise of due diligence he should have ascertained for his principal, the profits of such transaction, as a matter of law, will belong exclusively to the agent's principal. The law guards the fiduciary relation, which the relation of principal and agent is, with jealous care. It seeks to prevent the possibility of a conflict between duty and personal interest. It demands that the agent shall work with an eye single to the interest of his principal. It forbids him from acting adversely to his principal, either for himself or for others.'"

AFFIDAVIT at ECF 22-1, 10-12 ¶ 33), when she abandoned WLD's collective corporate governance by threatening to publicize a confidential agreement entered into by WLD and a third party, (*Id.*; See also ERTZ AFFIDAVIT at ECF 22-1, 11-12 ¶ 33), when she threatened to defame WLD and Ertz, and when she reiterated the threat to Ertz absent board approved of what she wanted, (*Id at ¶ 33-34;* Appx. 023-024).

### *b. Meyer Breached Her Duty of Confidentiality*

Board members cannot discuss confidential board business with outsiders. Meyer executed an explicit agreement acknowledging her duty of confidentiality and acknowledged that a breach of such constituted material harm to WLD. (ERTZ AFFIDAVIT at 4 ¶ 9). Meyer forwarded WLD contact data to PPCO.

### 3. **WildLands Likely To Succeed On Claim of Defamation**

To prove defamation a party must show that a defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication. *Clark v. The Spokesman-Review*, 163 P.3d 216, 219 (2007) citing *Gough v. Tribune–Journal Co.*, 249 P.2d 192, 194 (1952).

Meyer publicized her characterization of a confidential correspondence between WLD's counsel and her own on WLD's WildLands Defense Colorado Facebook page. (FITE AFFIDAVIT at 13-14 ¶ 38). Immediately thereafter, former WLD members and colleagues responded by sending Brian Ertz emails, (ERTZ AFFIDAVIT at 14-15 ¶¶ 42-42; Appx. 026-027), and several members terminated their membership and requested refunds of previous donations. (ERTZ AFFIDAVIT at ¶ 34). In addition, Meyer is actively

11

sabotaging collaborative relationships with WLD colleagues. On or about October 11, 2016 Meyer communicated defamatory characterizations of WLD board members to an email listserve of colleagues (ERTZ AFFIDAVIT at 13-14 ¶ 39) with whom WLD had spent considerable time and resources collaborating in furtherance of its great basin program. Communication, collaboration, and resultant effort with those colleagues has since ceased, resulting in substantial waste of WLD's investment of time and resources in the collaboration. (FITE AFFIDAVIT at 6-8, 14-15; ¶¶ 14-20, 41-43). Meyer likewise encouraged WLD's colleagues to spread the word, and that more characterizations would be forthcoming upon initiation of this lawsuit. (ERTZ AFFIDAVIT at 13-14 ¶¶ 39). Meyer's defamatory characterizations have spread to at least one journalist with whom WLD's reputation for credibility and trustworthiness have helped the organization advance its mission via its outreach in national and international publications including *National Geographic Online*, *Harper's Magazine, VICE Magazine*, among others. (ERTZ AFFIDAVIT at 13 ¶ 38). Meyer's defamation of WLD, Fite and Ertz is causing ongoing damage to WLD and frustrating WLD's purpose.

### B. COUNTERCLAIMANTS WILL SUFFER IRREPARABLE HARM

To constitute irreparable harm, an injury must be certain, great, actual "and not theoretical." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001). Irreparable harm is not harm that is "merely serious or substantial." *Id.* (quoting *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976)). Irreparable injury is established "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." Id.

at 1251.

A key concept in the harm for which a preliminary injunction is warranted is that there is an injury not capable of compensation with money. This is elucidated in <u>Mountain Med. Equip., Inc. v. Healthdyne, Inc.</u>, 582 F. Supp. 846, 848 (D. Colo. 1984):

> Although there is no black letter definition of what constitutes an irreparable injury, *City of Benton Harbor v. Richardson,* 429 F.Supp. 1096, 1101 (W.D.Mich.1977), the essence of the concept requires a substantial threat of harm to the movant that cannot be compensated by money. *Spiegel v. City of Houston,* 636 F.2d 997 (5th Cir.1981). A threat, by definition, only encompasses action about to occur. The notion of irreparable injury thus only refers to harm that might occur *pendente lite* if the preliminary injunction is not granted. *Spartacus, Inc. v. Borough of McKees Rocks,* 694 F.2d 947 (3d Cir.1982). Harm that has already occurred cannot be remedied by an injunction. *Automated Marketing Systems, Inc. v. Martin,* 467 F.2d 1181 (10th Cir.1972) (where plaintiff's customers had been obtained in violation of a restrictive covenant, remedy at law was adequate).

If future harm is not quantifiable, irreparable harm may be found and a preliminary injunction may issue. *Id.* at 848-49.

If this Court does not issue preliminary injunctive relief ordering a cessation of Meyer's and PPCO use of WLD's contact data, social media assets, intellectual property, then would-be donors, supporters, and followers will continue to be confused about the origin of action requests and of information, response to donation requests will exhaust (depriving WLD of resources), and Meyer and/or PPCO will have WLD's own platforms and outreach assets with which to continue to defame WLD to WLD's own members, supporters, colleagues, and the public. The damage to WLD is likely to be significant, irreparable, and not capable of monetary quantification. If the defamation by Meyer and PPCO of WLD and its Board members continues, countless additional fundraising, collaborative, and conservation opportunities will be lost to WLD, unfairly.

Given Meyer's previous and existing threats to breach a confidential agreement with a third party, her demonstrated willingness to disregard fiduciary duties owing to WLD, her demonstrated willingness to disregard her own expressly signed confidentiality agreement with WLD, and the extent and reach of defamatory injury to WLD and WLD board members' reputation that has already occurred reaching colleagues and journalists, a preliminary injunction ordering Meyer to abstain from characterizing WLD, its board members, and any details of WLD board business during the pendency of this suit is necessary to further prevent further harm to WLD's reputation. Such further harm will result in loss of opportunity and effectiveness of WLD, curtailed collaboration with colleagues, lost media outreach opportunities, lost advocacy and fundraising opportunities, and loss of the support of members.

### C. BALANCE OF EQUITIES TIPS IN COUNTERCLAIMANTS' FAVOR

The balance of equities tips in WLD/Ertz's favor because WLD has a clear property interest in the contact information taken by Meyer, and Meyer has no legitimate claim to that information. Meyer is using contact data developed by WLD for the benefit of her competing entity, PPCO, depriving WLD of funds, supporters, and even denigrating WLD and its Board members in order to further erode support for WLD and promote PPCO. Neither Ertz nor WLD engaged in any wrongdoing towards Meyer, whereas the record is clear that Meyer has engaged in substantial wrongdoing towards WLD and Ertz. Further, ongoing defamation of WLD causes extensive, intentional damage, frustrates the purpose of WLD, and is not quantifiable for monetary damages. The defamatory statements need to cease and should be enjoined during pendency of

the lawsuit.

### D. BALANCE OF HARM INJUNCTION IS IN THE PUBLIC INTEREST

The Court must balance the harm between the threatened injury to the movant and the other party in weighing an injunction. "To be entitled to a preliminary injunction, the movant has the burden of showing that "the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction." *Kikumura,* 242 F.3d at 955." Heideman v. S. Salt Lake City, 348 F.3d 1182, 1190 (10th Cir. 2003). PPCO using WLD contact data causes confusion to the public as to whether communications are coming from WLD or PPCO, and the public interest is served by preventing PPCO from using the WLD contact data for communications, fundraising or other purposes.

### V. CONCLUSION

Counterclaimants respectfully request that Counterclaimants' Motion for Preliminary Injunction be granted and that the Court utilize its discretion to decide the motion without oral argument pursuant D.C.COLO.LCivR 7.1(h). Counterclaimants request an order: 1) enjoining Meyer and PPCO and their agents, employees, affiliates, and all those acting in concert with them from use of the WLD contact data or templates; 2) requiring return of administrative control of the WLD Facebook page, now operated by PPCO, to WLD, or in the alternative, the removal of the PPCO Facebook page; and 3) enjoining Meyer and PPCO from further disclosure of WLD confidential matters.

Respectfully submitted this 8th day of January, 2017.

DAVISON & COPPLE, LLP.

/s/ *Heather A. Cunningham*

15

Heather A. Cunningham
199 N. Capitol Blvd., Ste. 600
Boise, ID  83702
Phone:  208-342-3658
Fax: 208-386-9428
Email:Cunningham@davisoncopple.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January, 2017, a true and correct copy of the foregoing **COUNTERCLAIMANTS' MOTION FOR PRELIMINARY INJUNCTION** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

David F. Askman:   dave@askmanlaw.com

Michael M. Frandina:   michael@askmanlaw.com

/s/ *Heather A. Cunningham*